IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**PATHFINDER TRANSPORT, LLC**                                              **PLAINTIFF**

V.                                    **CASE NO. 5:17-CV-5013**

**PINNACLE PROPANE, LLC**                                                 **DEFENDANT**

## OPINION AND ORDER

Defendant Pinnacle Propane, LLC ("Pinnacle") removed the above-captioned case to this Court on January 17, 2017, after Plaintiff Pathfinder Transport, LLC ("Pathfinder") sued it for breach of contract in the Circuit Court of Benton County, Arkansas. During the parties' March 27, 2017 case management hearing, the Court *sua sponte* raised a concern about its subject-matter jurisdiction, and requested briefing on the matter. Pinnacle filed its Brief (Doc. 13) on April 14, 2017, contending that the Court can properly exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332. Pathfinder filed its adverse Response (Doc. 15) on April 24, 2017, and Pinnacle filed a Reply (Doc. 16) on May 1, 2017. Having reviewed the parties' briefings, the Court finds that it lacks subject-matter jurisdiction over this case, and therefore **REMANDS** the case to the Circuit Court of Benton County, Arkansas.

## I. DISCUSSION

Article III of the Constitution vests the federal courts with jurisdiction to hear "controversies . . . between citizens of different states." U.S. Const. art. III, § 2, cl. 1. Congress has since granted "[t]he district courts . . . original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between

. . . citizens of different States." 28 U.S.C. § 1332(a)(1). To determine the "citizenship" of an LLC, like Pinnacle, the Court looks to the citizenship(s) of its underlying member(s). See GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827 (8th Cir. 2004). On the parties' Joint Rule 26(f) Report, Pinnacle reported that its sole member is a master limited partnership ("MLP") called JP Energy Partners, LP ("JP Energy"). (Doc. 10, p. 5).[1]

An MLP is an artificial entity that bears some characteristics of a limited partnership, and some characteristics of a corporation. "MLPs are similar to limited partnerships," on the one hand, "in that they have general partners who manage the partnership's affairs and limited partners (called 'unitholders') who provide capital." Grynberg v. Kinder Morgan Energy Partners, L.P., 805 F.3d 901, 904 (10th Cir. 2015), cert. denied, 136 S. Ct. 1714 (2016). On the other hand, ownership units of MLPs are publicly traded, like shares of a corporation. Id. Federal law treats MLPs as partnerships for tax purposes, allowing them to benefit from "pass through" taxation, when they meet certain conditions. See 26 U.S.C. § 7704; Grynberg, 805 F.3d at 904. MLPs realize this benefit when "90 percent or more of the [MLPs] gross income . . . consists of qualifying income." 26 U.S.C. § 7704(c)(2). "Qualifying income" includes, in relevant part, "income and gains derived from the exploration, development, mining or production, processing, refining, transportation, or the marketing of any mineral or natural resource, industrial

---

[1] In Pinnacle's Brief, it reports that JP Energy has since merged with American Midstream Partners, LP. The new entity remains an MLP, and the merger does not impact the Court's analysis. The Court will accordingly continue to refer to JP Energy as Pinnacle's sole member to avoid confusion.

2

source of carbon dioxide, or the transportation or storage of [certain fuels]." *Id.* at (d)(1)(E) (parentheticals omitted).

This case raises the question of whether the citizenship of an MLP should be determined based on the citizenship of its partners—like other non-incorporated artificial entities—or based on the place of its chartering and headquarters—like corporations. If JP Energy is treated like a corporation, then the Court can exercise its diversity jurisdiction because Pinnacle would not be a "citizen" of Arkansas. If JP Energy's citizenship depends on the citizenship of its partners, then the Court lacks subject-matter jurisdiction; Pinnacle has stipulated that JP Energy has at least one limited partner in Arkansas. (Doc. 13, p. 3).

Though the Supreme Court has not directly addressed this issue, it has repeatedly found that the citizenship of other forms of non-incorporated entities must be determined by reference to the citizenships of their members. For example, in *Chapman v. Barney*, the Supreme Court reversed and remanded a case where the citizenship of a "joint-stock company"—a form of partnership—was alleged to be New York. 129 U.S. 677, 682 (1889). Even though "the company may have been organized under the laws of the state of New York, and may be doing business in that state, . . . all the members of it may not be citizens of that state." *Id.* Accordingly, diversity jurisdiction could not be established unless it was shown that none of the company's members were citizens of Illinois, the state of the defendant's citizenship. *Id.*

Just more than a decade later, the Supreme Court held that a Pennsylvania "limited partnership association" could not be treated as a corporation for diversity jurisdiction purposes. *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900).

Though the rule that "a corporation [is] to be deemed a citizen of the state creating it[] has long been recognized," no such rule "has been applied to partnership associations . . . ." *Id.* at 456. This was so even though Pennsylvania recognized that limited partnership associations had "some characteristics of a corporation," and could even be categorized as a "quasi corporation." *Id.* at 457. Such similarities were not "sufficient reason for regarding [the limited partnership association] as a corporation within the jurisdictional rule . . . . That rule must not be extended." *Id.*

In 1965, the Supreme Court held that an unincorporated union's citizenship must be determined based on the citizenships of its members. *United Steelworkers of Am., AFL-CIO v. R. H. Bouligny, Inc.*, 382 U.S. 145 (1965). This was so despite the fact, pointed out by courts and commentators, that "many voluntary associations and labor unions are indistinguishable from corporations in terms of the reality of function and structure." *Id.* at 149-50. Though criticism of the formalistic distinction made by the Supreme Court between incorporated and unincorporated entities was "with considerable merit," that criticism was "addressed to an inappropriate forum." *Id.* at 150. "[P]leas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not the courts." *Id.* at 150-151.

Consistent with the *Bouligny* Court's deferential position, in *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), the Supreme Court held that the citizenship of limited partners in a limited partnership had to be taken into account in evaluating diversity jurisdiction. Once again, the Supreme Court recognized the formalistic nature of its holding, admitting that it "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business

4

organization." *Id.* at 196. And, once again, the Court decided that these criticisms were properly addressed to Congress. *Id.*

The one anomalous case in the Supreme Court's jurisprudence is *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933). That case involved a type of Puerto Rican entity known as a "socieded en comandita." *Id.* at 477. An "exotic creation of the civil law," *Bouligny*, 382 U.S. at 151, the sociedad en comandita was "consistently regarded as a juridical person" by "the law of its creation." *Russell & Co.*, 288 U.S. at 481. Its juridical personality was "so complete in contemplation of the law of Puerto Rico" that the Supreme Court could "see no adequate reason for holding that the sociedad has a different status for purposes of federal jurisdiction than a corporation organized under that law." *Id.* at 482.

Both the *Bouligny* and *Carden* Courts have categorized *Russell* as being, essentially, *sui generis*. The problem presented by *Russell*, "was that of fitting an exotic creation of the civil law . . . into a federal scheme which knew it not." *Bouligny*, 382 U.S. at 151; *see also Carden*, 494 U.S. at 190 (rejecting a litigant's reliance on *Russell* as being foreclosed by *Bouligny's* characterization of the case). For this reason, *Russell* does not supply precedent for "look[ing] beyond the incorporated/unincorporated dichotomy." *Carden*, 494 U.S. at 190 (quoting the respondent's brief). It is instead a unique exception to the Supreme Court's otherwise consistent policy of deferring to Congress in extending juridical personhood to non-corporate entities.

This observation is undoubtedly why every federal court (to this Court's knowledge) asked to decide whether to treat MLPs as corporations for jurisdictional purposes has answered that question in the negative. *E.g.*, *Grynberg*, 805 F.3d at 901;

*Markwest Liberty Midstream & Res., L.L.C. v. Bilfinger Westcon, Inc.*, 2016 WL 6553591 (N.D.W. Va. Nov. 4, 2016); *Cabrera v. Aboytes-Munis*, 2015 WL 5093230 (S.D. Tex. Aug. 7, 2015), *R&R adopted*, 2015 WL 5093234 (S.D. Tex. Aug. 28, 2015); *LL & E Royalty Trust ex rel. Parsons v. Quantum Res. Mgmt., LLC*, 2015 WL 4274987 (E.D. Mich. July 14, 2015); *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, 103 F. Supp. 3d 1000 (D. Minn. 2015), *vacated on other grounds*, 843 F.3d 325 (8th Cir. 2016); *Trafigura AG v. Enter. Prod. Operating LLC*, 995 F. Supp. 2d 641 (S.D. Tex. 2014); *see also* Doc. 15, p. 4 (collecting additional cases).

Pinnacle's contention that the Court should deviate from this apparently unanimous approach rests on unfounded justifications. Most notably, Pinnacle contends that this case is distinguishable from *Bouligny* and *Carden*. It posits that the *Carden* Court "circumscribed *Bouligny*," (Doc. 13, p. 7), by describing that Court's holding as applying "at least [to] common-law entities," which, according to Pinnacle, means that statutory creatures like MLPs fall outside the scope of those cases. *Carden*, 494 U.S. at 190. The Court disagrees with this entire premise. First, to suggest that *Carden* circumscribed *Bouligny* is an incorrect reading of the former case. *Carden* heartily reaffirmed the two central premises of *Bouligny*: (i) that *Russell* was an outlier; and (ii) that "further adjustments" to "the field of diversity policy with regard to artificial entities" should be left to Congress. *Id.* at 196. Pinnacle takes a rather innocuous clause from *Carden* and stretches it beyond its bounds.[2]

---

[2] Moreover, its Brief omits a parenthetical from the clause that further weakens its already tenuous argument. Pinnacle's Brief quotes the *Carden* Court as stating, "There can be no doubt, after *Bouligny*, that at least common-law entities . . . be treated for purposes of the diversity statute pursuant to what *Russell* called '[t]he tradition of the common law,' which is 'to treat as legal persons only incorporated groups and to assimilate all others to

6

Second, and more to the point, Pinnacle's description of MLPs as "a recent creation of Congress," and thus somehow distinguishable from, say, regular limited partnerships, is plainly false. (Doc. 13, p. 7). MLPs are not a creation of Congress at all; they are state-chartered entities, such as limited partnerships or LLCs, that are publicly traded. *See* Matthew Hoffman, *Unraveling the Jurisdictional Citizenship of Master Limited Partnerships*, 4 HLRe 127, 128 (2014) ("A master limited partnership is a limited partnership or limited liability company with publicly traded interests . . . .").[3] The use of MLPs began in the early 1980s, as changes in *state* partnership statutes made "publicly traded partnerships a realistic and, ultimately, popular alternative." John C. Ale, Partnership Law for Securities Practitioners § 6:1 (2016 ed.). The use of MLPs allowed the entity to raise capital on the public markets, and investors to benefit from pass-through taxation. *Id.* Congress's main involvement came with the Revenue Act of 1987, when it decided to treat MLPs as corporations for tax purposes—essentially eliminating the benefit of organizing as an MLP—except for narrow classes of MLPs such as those with sufficient "qualifying income" from the natural resources described *supra*. Pub. L. No. 100-203, 101 Stat. 1330; 26 U.S.C. § 7704. Just because JP Energy Partners, LP (presumably) fits within the tax exception created by Congress does not somehow morph it into that Branch's statutory creation, even if such a conceptual transformation would

---

partnerships.'" (Doc. 13, p. 7 (ellipses in original)). What Pinnacle's use of an ellipses in that quotation importantly omits, however, is the following parenthetical: "(and likely all entities beyond Puerto Rican *sociedad en comandita*)" *Carden*, 494 U.S. at 190 (emphasis in original).

[3] Hence why Pinnacle listed its sole member, JP Energy Partners, *LP*—that is, JP Energy Partners, *Limited Partnership*—as a Delaware citizen on the parties' Joint Rule 26(f) Report. (Doc. 10, p. 5).

place it beyond the reach of *Carden* and *Bouligny*, which it would not. Pinnacle's attempt to distinguish *Carden* and *Bouligny* falls short.[4] The Court will accordingly follow those cases, along with the increasing body of federal case law on MLPs, and find that it lacks subject-matter jurisdiction in this case.

As a final matter, Pathfinder asks the Court to award it attorney fees for Pinnacle's unwarranted removal of this case to federal court. "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court's review of case law involving MLPs and removal to federal court reveals differing opinions on whether an award of attorney fees is appropriate in such situations. *Compare Markwest Liberty*, 2016 WL 6553591, at *5 (declining to exercise its discretion to award attorney fees), *with Ada Cnty. Highway Dist. v. Nw. Pipeline GP*, 2012 WL 4737869, at *2 (D. Idaho Oct. 3, 2012) (finding that removal was "not objectively reasonable" and awarding attorney fees). As neither the Supreme Court nor the Eighth Circuit has directly addressed the treatment of MLPs for diversity jurisdiction purposes, the Court cannot say that Pinnacle "lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. The Court will accordingly decline to award attorney fees to Pathfinder.

---

[4] As to Pinnacle's policy arguments for reaching a contrary result, the Court can only repeat what this nation's highest court has said to similarly situated litigants: this is an issue that must be addressed by Congress, not the federal courts.

8

## II. CONCLUSION

For the reasons stated herein, the Court finds that it lacks subject-matter jurisdiction in this case, and **REMANDS** the case to the Circuit Court of Benton County, Arkansas.

**IT IS SO ORDERED** on this 2nd day of May, 2017.

_/s/ Timothy L. Brooks_
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE